UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| JEFFREY E. JONES, JULIE J. HUTCHESON, and DAVID C. ALLEN, Individually and as Co-Personal Representatives of the ESTATE OF LOIS A. JONES, and as CO-TRUSTEES OF THE LOIS A. JONES REVOCABLE TRUST u/a/d OCTOBER 6, 2006, and the ESTATE OF LOIS A. JONES, | Civil Action No. 22-10763-JCB |
| Plaintiffs, | |
| v. | |
| TOWN OF HARWICH, et al., Defendants. | |

---

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Docket No. 41]

August 23, 2024

Boal, M.J.

In this action, plaintiffs Jeffrey Jones, Julie Hutcheson, David Allen, and the Estate of

Lois A. Jones allege that the application of the Town of Harwich Wetland Protection Bylaw and

Regulations to their property at 5 Sea Street Extension in Harwich, Massachusetts (the

"Property"), imposes such stringent restrictions that they are prevented from developing or

making any beneficial use of the Property and, as a result, a regulatory taking has been effected

entitling them to compensation.  Defendants the Town of Harwich, the Harwich Conservation

Commission (the "Commission"), and the Harwich Board of Health (the "Board") have moved

for summary judgment in their favor.  Docket No. 41.[1]  For the following reasons, I grant in part

---

[1] On October 15, 2022, the parties consented to the jurisdiction of a magistrate judge for all

and deny in part the motion.

I.      FACTS[2]

    A.      The Property

In 1958, Lois H. Jones, formerly Lois H. Allen, purchased two properties in Harwich Massachusetts, comprised of two distinct lots, known as 5 and 6 Sea Street Extension for approximately $40,000 with the death benefit she received from the United States Marine Corps following the death of her first husband.[3]  Ms. Jones acquired and owned both 5 Sea Street Extension and 6 Sea Street Extension under a single Certificate of Title.[4]  From 1987 to 1995, Ms. Jones also held an interest in 8 Sea Street Extension as a tenant in common.[5]

5 Sea Street Extension and 6 Sea Street Extension are separated by a private roadway, 40 feet wide.[6]  5 Sea Street Extension is a vacant lot that abuts the ocean.[7]  The lot is zoned RF1 – Residential High Density 1, which is intended for residential development.[8]  The immediate area

---

purposes and, on October 17, 2022, the case was reassigned to the undersigned.  See Docket Nos. 10, 14.

[2] The facts are taken from the parties' Consolidated Statement of Material Undisputed Facts (Docket No. 44-2).  Statements of fact are referred to as "SOF" while responses are referred to as "Resp."  This Court construes the record in the light most favorable to the Plaintiffs and resolves all reasonable inferences in their favor.  Baum-Holland v. Hilton El Con Management, LLC, 964 F.3d 77, 87 (1st Cir. 2020) (citations omitted).

[3] Resp. ¶¶ 5, 18; see also Affidavit of Jeffrey E. Jones (Docket No. 44-1 at 145-147) ("Jones Aff.") at ¶ 4.

[4] SOF ¶ 6; Resp. ¶ 6.

[5] Resp. ¶ 8.  8 Sea Street Extension is located at the very end of Sea Street Extension.  Id.

[6] SOF ¶ 7; Resp. ¶ 7.

[7] Resp. ¶ 9.

[8] Id.

is improved with high-end residential properties.[9]  6 Sea Street Extension is improved with a

four-bedroom house.[10]  6 Sea Street Extension is upland from 5 Sea Street Extension and offers a

view of the ocean through the vacant 5 Sea Street Extension.[11]

Ms. Jones occupied the residence at 6 Sea Street Extension with her two children for

approximately two years between 1958 and 1960.[12]  Otherwise, the family would travel to the

Property at 6 Sea Street Extension on weekends in the Spring to prepare the property for summer

renters.[13]  When 5 Sea Street Extension and 6 Sea Street Extension are owned by the same party

in their current states and the properties are used together as a single homestead, 5 Sea Street

Extension adds significant value to 6 Sea Street Extension, because of the ability to use 5 Sea

Street Extension as a private beach and the improved view from 6 Sea Street Extension.[14]

Plaintiffs maintain that it was always Ms. Jones's intention to build a single-family home

on 5 Sea Street Extension.[15]  In furtherance of her goal to develop 5 Sea Street Extension, Ms.

Jones sold 6 Sea Street Extension to a disinterested buyer in 1999 for $410,000.[16]  In 2011, Ms.

Jones initiated the formal process of obtaining permits to construct a single-family dwelling on 5

---

[9] Id.

[10] SOF ¶ 10; Resp. ¶ 10.

[11] SOF ¶ 11; Resp. ¶ 11.

[12] Resp. ¶ 13.

[13] Resp. ¶ 12.

[14] SOF ¶ 14.  Plaintiffs stated that they are "unable to admit or deny" this statement.  Resp. ¶ 14. A party opposing summary judgment cannot create a genuine issue of fact by stating that he lacks knowledge and information to admit or deny the statement and, therefore, this fact is deemed admitted.  See Diaz v. City of Somerville, 583 F.Supp.3d 296, 304 n.12 (D. Mass. 2022).

[15] Jones Aff. at ¶ 7.

[16] SOF ¶ 15; Resp. ¶ 15; Jones Aff. at ¶ 11.

Sea Street Extension.[17]  However, she died on November 19, 2014, before obtaining the

necessary permits.[18]  Ms. Jones paid taxes on 5 Sea Street Extension, which was assessed by the

Town of Harwich as a "buildable" lot until the first permit application denial in 2012.[19]  As a

result of the denial, beginning in Fiscal Year 2013, the Town changed the tax assessment

designation to "unbuildable" and reduced the assessed valuation from $1,434,500 to $24,000.[20]

Since Ms. Jones's death, her family has continued to pay the taxes on the Property.[21]  The estate

has also undertaken Ms. Jones's endeavor to obtain the necessary permits to construct a single-

family dwelling on the Property.[22]

      B.     <u>Prior Proceedings</u>

      On November 21, 2011, Ms. Jones filed a Notice of Intent ("NOI") with the Commission

proposing construction of a single-family dwelling, septic system, and utilities.[23]  On April 23,

2012, the Commission issued a denial Order of Conditions.[24] On May 2, 2012, a superseding

review by the Department of Environmental Protection ("DEP") was requested.[25]  On October

15, 2012, the DEP issued a Superseding Order of Conditions affirming the Commission's 2012

---

[17] Jones Aff. at ¶ 12.

[18] <u>Id.</u>

[19] <u>Id.</u> at ¶ 13.

[20] <u>Id.</u> at ¶ 14.  Plaintiffs' expert has opined that the Property is worth $100,000 in an unbuildable state and $2,350,000 in a buildable state.  SOF ¶¶ 16, 17; Resp. ¶¶ 16, 17.

[21] <u>Id.</u> at ¶ 15.

[22] <u>Id.</u> at ¶ 16.

[23] Resp. ¶ 1; Affidavit of John O'Reilly, P.E. (Docket No. 44-1 at 4-11) ("O'Reilly Aff.") at ¶ 10.

[24] O'Reilly Aff. at ¶ 11.

[25] <u>Id.</u> at ¶ 12.

denial decision (the "Original SOC") and denying the project under the Wetlands Protection Act (the "Act").[26]

The Jones Family appealed the Original SOC by filing a Notice of Claim for an Adjudicatory Hearing pursuant to 310 C.M.R. 10.05(j)(2).[27]  On August 2015, the DEP's Southeast Regional Office ("DEP-SERO") issued an SOC approving the proposed project (the "August 2015 SOC").[28]  Owners of abutting properties at 6, 7, and 8 Sea Street Extension appealed the August 2015 SOC.[29]  Thereafter, the abutters, the DEP, and the Jones Family entered into a Settlement Agreement and agreed upon a "Final Order of Conditions" that was approved by the Presiding Officer of the Adjudicatory Proceeding.[30]  The Final Order of Conditions was issued on December 22, 2015, has been extended, and is currently valid.[31]

In an attempt to comply with the Harwich regulations, the Jones Family revised their plan and on, February 16, 2021, filed a Notice of Intent to the Commission for approval to build a residence at the Property.[32]  On July 26, 2021, the Commission issued an Order of Conditions denying the proposed project under the Harwich Wetlands Protection Bylaw and Regulations.[33]  The Commission also found that the project violated state wetlands regulations and issued a

---

[26] O'Reilly Aff. at ¶ 13.

[27] Id. at ¶ 14.

[28] Id. at ¶ 21.

[29] Id. at ¶ 22.

[30] Id. at ¶ 23.

[31] Id. at ¶¶ 25, 26.

[32] SOF ¶ 1; Resp. ¶ 1

[33] SOF ¶ 2; Resp. ¶ 2.  In addition, the Board denied a septic permit because the project had not been approved by the Commission.  See Docket No. 44-1 at 173-174.

denial under the state wetland regulations.[34]  Plaintiffs did not appeal the decision under the state

regulations to the DEP.[35]  The Plaintiffs maintain that an appeal to the DEP is not necessary

because the 2015 Final Order of Conditions may be amended to reflect the proposed project as

depicted in the February 12, 2021 plan.[36]  In addition, the Plaintiffs submit that because the

Commission denied the project under the Harwich Wetlands Protection Bylaw and Regulations,

seeking an amendment to the state permit would be futile without the Harwich permit and the

project cannot move forward.[37]

II.    ANALYSIS

    A.    Standard Of Review

Summary judgment is appropriate if the record, viewed in the light most favorable to the

nonmoving party "discloses 'no genuine issue of material fact' and [thus] demonstrates that 'the

moving party is entitled to a judgment as a matter of law.'"  Zabala-De Jesus v. Sanofi-Aventis

Puerto Rico, Inc., 959 F.3d 423, 427-428 (1st Cir. 2020) (quoting Iverson v. City of Boston, 452

F.3d 94, 98 (1st Cir. 2006)).  A dispute is genuine where the evidence "is such that a reasonable

jury could resolve the point in the favor of the non-moving party."  Rivera-Rivera v. Medina &

Medina, Inc., 898 F.3d 77, 87 (1st Cir. 2018) (citation omitted).  A material fact is one with the

"potential of changing a case's outcome."  Doe v. Trustees of Bos. College, 892 F.3d 67, 79 (1st

Cir. 2018).

"To avoid 'the swing of the summary judgment scythe,' the nonmoving party must

---

[34] SOF ¶ 3; Resp. ¶ 3.

[35] SOF ¶ 4; Resp. ¶ 4.

[36] See O'Reilly Aff. at ¶¶ 34-45.

[37] Id. at ¶ 46.

adduce specific facts showing that a trier of fact could reasonably find in his favor."  Johnson v.

Johnson, 23 F.4th 136, 141 (1st Cir. 2022) (citation omitted).  "The nonmovant cannot rely on

'conclusory allegations, improbable inferences, and unsupported speculation.'"  Id. (citation

omitted).

       B.       <u>Regulatory Takings Clause Claims</u>

The Fifth Amendment's Takings Clause, which applies to the states through the

Fourteenth Amendment, provides that "private property shall not 'be taken for public use,

without just compensation.'"  <u>Murr v. Wisconsin</u>, 582 U.S. 383, 392 (2017).  "The Supreme

Court has recognized two types of takings: physical takings and regulatory takings."  <u>In re Fin.

Oversight and Mgmt. Bd. for Puerto Rico</u>, 54 F.4th 42, n.18 (1st Cir. 2022) (citation omitted).  In

this action, the Plaintiffs allege a regulatory taking, which occurs "when some significant

restriction is placed upon an owner's use of his property for which 'justice and fairness' require

that compensation be given."  Id. (citation omitted).

"The Supreme Court's regulatory takings jurisprudence has eschewed bright-line rules."

<u>Franklin Memorial Hosp. v. Harvey</u>, 575 F.3d 121, 125 (1st Cir. 2009).  "Indeed, in contrast to

the law of physical takings, which typically involves the straightforward application of *per se*

rules, regulatory takings jurisprudence is characterized by essentially ad hoc, factual inquiries,

designed to allow careful examination and weighing of all the relevant circumstances."  Id.

(internal citations and quotations marks omitted).

The Supreme Court has identified "two categories of regulatory action that generally will

be deemed *per se* takings."  Id. (citing <u>Lingle v. Chevron U.S.A., Inc.</u>, 544 U.S. 528, 538

(2005)).  "First, where [the] government requires an owner to suffer a permanent physical

invasion of her property—however minor—it must provide just compensation."  Id.  Second, a

per se regulatory taking occurs where the "regulations completely deprive an owner of '*all*

economically beneficial us[e] of her property.'"  Id. (emphasis and alteration in original).

When the challenged government action does not fall under either category of per se

regulatory taking, courts apply an ad hoc analysis.  Id. at 126.  The court's analysis is guided by

the three factors enumerated in the Supreme Court's decision in Penn Central Transportation Co.

v. City of New York, 438 U.S. 104, 124 (1978).  Id.  Those factors are (1) "[t]he economic

impact of the regulation on the claimant;" (2) "the extent to which the regulation has interfered

with distinct investment-backed expectations;" and (3) "the character of the government action."

Id.  "[T]he Penn Central inquiry turns in large part, albeit not exclusively, upon the magnitude of

a regulation's economic impact and the degree to which it interferes with legitimate property

interests."  Id. (citing Lingle, 544 U.S. at 540).  "Ultimately, this inquiry 'aims to identify

regulatory actions that are functionally equivalent to the classic taking in which the government

directly appropriates private property or ousts the owner from his domain.'"  Id.

    C.    Defendants' "But-For" Argument

The Town argues that the Plaintiffs can only recover under their regulatory takings claim

if the Property would be buildable "but for" the alleged offending Town of Harwich regulation.

Docket No. 42 at 4.  Here, the Commission denied the Plaintiffs' proposed project both under the

Harwich Wetlands Protection Bylaw and state wetlands regulations.  SOF ¶¶ 2, 3; Resp. ¶¶ 2, 3.

According to Defendants, "[b]ecause 5 Sea Street Extension is already unbuildable due to the

state regulations, and remains so by lack of appeal to the [DEP], the application of the Harwich

Wetlands Protection Bylaw cannot make the property 'more unbuildable.'"  Docket No. 42 at 5.

Therefore, they argue, Plaintiffs cannot prove that it was the Harwich Wetlands Protection

Bylaw that caused the alleged diminution in value and injury to the Plaintiffs.  Id. at 3-5.

Even if Defendants are correct that there is a "but for" element in a regulatory takings claim,[38] issues of material fact preclude summary judgment on this issue.  The Plaintiffs have presented evidence that they obtained, and currently have, a valid wetlands permit from the DEP authorizing the construction of a dwelling on the Property.  O'Reilly Aff. at ¶¶ 23, 25-26.  Although that permit was granted for the project proposed in 2011, the Plaintiffs have also presented evidence, in the form of an expert affidavit, that the permit may be amended to encompass the current proposal and an appeal to the DEP was therefore not necessary.  See id. at ¶¶ 34-45.  Therefore, contrary to Defendants' argument, there is an issue of fact regarding whether the Property is rendered unbuildable by the Town's regulations singularly or concurrently with the state regulations.

The Defendants' hypothetical does not support their argument:

> Suppose tomorrow the entirety of the Harwich Wetlands Protection Bylaw were nullified and vacated *nunc pro tunc* due to some irregularity in the manner in which it was enacted.  The Plaintiff's proposed project would, of course, no longer be prevented by operation of the local Harwich regulation.  However, the project would still be disallowed under the state Wetlands Protection Act and related state regulations.

Docket No. 42 at 4-5.  Contrary to Defendants' arguments, it is not clear that, under their hypothetical, the project would still be disallowed under the state Wetlands Protection Act.  The record contains evidence that the 2015 Final Order of Conditions could be amended and the project would in fact be allowed.  Accordingly, whether or not the Harwich regulations are the "but for" cause of the plaintiff's alleged injury presents issues of fact.

---

[38]  Defendants cite to Murr, 582 U.S. 383, and Barth v. City of Peabody, No. 15-13794-MBB, 2018 WL 1567606 (D. Mass. Mar. 30, 2018), Docket No. 45 at 2, but those cases do not hold that there is such an element in a regulatory takings claim.

D.      The Relevant Parcel Is 5 Sea Street Extension

When determining whether a taking has occurred, the fact finder must first determine

what constitutes the property in question: "What is the proper unit of property against which to

assess the effect of the challenged governmental action?"  Murr, 582 U.S. at 395.  "Put another

way, because our test for regulatory taking requires us to compare the value that has been taken

from the property with the value that remains in the property, one of the critical questions is

determining how to define the unit of property whose value is to furnish the denominator of the

fraction."  Id. (internal quotation marks and citations omitted).

"Like the ultimate question whether a regulation has gone too far, the question of the

proper parcel in regulatory takings cases cannot be solved by any simple test."  Id. at 405

(citation omitted).  "Courts must instead define the parcel in a manner that reflects reasonable

expectations about the property."  Id.  "Courts must strive for consistency with the central

purpose of the Takings Clause: to 'bar Government from forcing some people alone to bear

public burdens which, in all fairness and justice, should be borne by the public as a whole.'"  Id.

(citation omitted).

In determining the relevant parcel, courts consider several factors: "the treatment of the

land under state and local law; the physical characteristics of the land; and the prospective value

of the regulated land."  Id. at 397.  "The endeavor should determine whether reasonable

expectations about property ownership would lead a landowner to anticipate that his holdings

would be treated as one parcel, or, instead, as separate tracts."  Id.  "The inquiry is objective, and

the reasonable expectations at issue derive from background customs and the whole of our legal

tradition."  Id.

Here, the Plaintiffs contend that the relevant parcel is the single lot of land in Harwich

10

owned by the Jones Family at the time the taking occurred, that is, 5 Sea Street Extension. Docket No. 44 at 9.  The Defendants, on the other hand, argue that the relevant parcel consists of 5 Sea Street and 6 Sea Street Extension combined.  Docket No. 42 at 5.

While Ms. Jones purchased 5 Sea Street Extension and 6 Sea Street Extension at the same time under a single Certificate of Title, Ms. Jones sold 6 Sea Street Extension in 1999.  SOF ¶¶ 5, 6, 15; Resp. ¶¶ 5, 6, 15.  As a result, the Plaintiffs do not own 6 Sea Street Extension and have not had any interest in it for 25 years.  Defendants have not cited, and this Court's research has not found, any cases where the relevant parcel was found to include property that the plaintiff did not own at the time of the alleged taking and had not had any interest in for decades before the alleged taking occurred.  Cf. South Nassau Build. Corp. v. Town Board of Town of Hampstead, 624 F.Supp.3d 261, 273 (E.D.N.Y. 2022) (citing Horne v. Dep't of Agric., 576 U.S. 350, 369 (2015)) ("[T]akings jurisprudence usually focuses on the state of play around 'the time of the taking.'").  Accordingly, this Court finds that the relevant parcel is 5 Sea Street Extension, the only lot owned by the Plaintiffs at the time the taking allegedly occurred.

E.   Plaintiffs' Lucas Claim Fails As A Matter Of Law

A plaintiff can only succeed on a claim under Lucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992) in "the extraordinary circumstance when *no* productive or economically beneficial use of land is permitted."  Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 535 U.S. 302, 330 (2002) (quoting Lucas, 505 U.S. at 1017) (emphasis in original).  A footnote in the Lucas opinion "explain[ed] that the categorical rule would not apply if the diminution in value were 95% instead of a 100%."  Id.  Here, Plaintiffs' own expert has opined that 5 Sea Street Extension has a value of $100,000 in an unbuildable state.  SOF ¶ 16; Resp. ¶ 16.  As such, Plaintiffs have not provided any evidence to show that the Property has

11

been deprived of all value and, therefore, their Lucas claim fails as a matter of law.  Accordingly, this Court grants summary judgment in favor of the Defendants on this claim.

       F.       Issues Of Fact Preclude Summary Judgment
               On Plaintiffs' Penn Central Takings Claim

As discussed above, even if the Property has not been deprived of all economically beneficial use, a non-categorical taking may be found based on a complex set of factors, including the economic impact of the regulation on the Plaintiffs; the extent to which the regulation has interfered with distinct investment-backed expectations, and the character of the governmental action.  Franklin Memorial Hosp., 575 F.3d at 126.  This inquiry "is ad hoc and fact intensive and requires a careful examination and weighing of all relevant circumstances." Culinary Studios, Inc. v. Newsom, 517 F.Supp.3d 1042, 1065 (E.D. Cal. 2021) (citations omitted).

*Economic Impact*.  The record contains evidence that the value of the Property has diminished significantly based on the Commission's decision.  As a result of the Commission's denial, starting in Fiscal Year 2013, the Town of Harwich reduced the tax assessment on the Property from $1,434,500 to $24,000.  Jones Aff. at ¶ 14.  In 2021, the Property was assessed by the Town of Harwich to have a value of $35,400.  See Affidavit of Paul J. Hartel (Docket No. 44-1 at 38-41) ("Hartel Aff.") at ¶ 8.  In addition, the Plaintiffs have provided a report from an appraisal expert, Paul J. Hartel, who has opined that, as of July 26, 2021, if the lot is buildable, it had a value of $2,350,000 and, if not buildable, it had a value of $100,000.  Hartel Aff. at ¶ 5 and Ex. B thereto.  The Town's own expert is of the opinion that, as buildable, 5 Sea Street has a value in the range of $2,584,000.  Docket No. 44-1 at 224.  Such evidence supports a substantial economic impact as a result of the Town's regulations.

*Investment-Backed Expectations*.  The second Penn Central factor protects a landowner's

"*reasonable* expectations."  <u>Maine Education Ass'n Benefits Trust v. Cioppa</u>, 695 F.3d 145, 154 (1st Cir. 2012) (emphasis in original; citation omitted).  "The purpose of the investment-backed expectation requirement is to limit recovery to owners who could demonstrate that they bought their property in reliance on a state of affairs that did not include the challenged regulatory regime."  <u>Martin v. Town of Simsbury</u>, 505 F.Supp.3d 116, 132 (D. Conn. 2020) (citations omitted).

Here, the regulations at issue were not in effect at the time that Ms. Jones bought the Property.  Nevertheless, the Defendants argue that it was unreasonable for Ms. Jones to wait over five decades to explore the possibility of building a house on 5 Sea Street Extension.  Docket No. 42 at 11.  They also argue that, although the Plaintiff's status as heirs does not bar their claim, "when the heirs lack any personal financial investment in the property it 'emphasizes [their] inability to demonstrate that [they] ever had any *reasonable* expectation of selling that particular lot for residential development' as opposed to receiving 'compensation that would constitute a 'windfall.'"  Docket No. 42 at 11 (citing <u>Gove v. ZBA of Chatham</u>, 444 Mass. 754, 766 (2005)) (emphasis in original).  The Plaintiffs, however, have presented evidence that Ms. Jones always intended to develop the land and that the sale of 6 Sea Street Extension in 1999 was in furtherance of that goal.  <u>See</u> Jones Aff. at ¶¶ 7, 11.  In addition, all other lots in the subdivision have been developed with homes.  Docket No. 44-1 at 149-150.  Further, the DEP has issued a wetlands permit authorizing the construction of a home on 5 Sea Street.  O'Reilly Aff. at ¶ 25-26.

The Defendants also argue that the Jones Family will obtain a windfall if compensated by the Town because the $100,000 residual value represents a 400% return assuming a $20,000 purchase price.  Docket No. 42 at 11.  The Plaintiffs, on the other hand, argue that the Town's

13

calculations fail to account for inflation.  Docket No. 44 at 18.  The parties' competing arguments and evidence on this issue present an issue of fact not appropriate for summary judgment.

      *Character Of The Governmental Action*.  A taking "may more readily be found when the interference with property can be characterized as a physical invasion by government than when the interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good."  Maine Education Ass'n Benefits Trust, 695 F.3d at 157 (citing Penn Central, 438 U.S. at 124).  Wetlands regulations such as the ones at issue here "are of general applicability to all property in the town that has wetland resources and, by their terms, are designed to protect coastal and wetland resources generally."  Smyth v. Conservation Comm'n of Falmouth, 94 Mass. App. Ct. 790, 799 (2019).  On the other hand, it appears that the Harwich Regulations would prevent any structure on the lot.  Therefore, the character of the governmental action at issue here could be considered to be the functional equivalent of a classic taking.

      As the foregoing discussion demonstrates, this fact intensive inquiry is best left to the fact finder at trial.  Accordingly, this Court denies the Defendants' motion for summary judgment as to the Plaintiffs' Penn Central claim.[39]

III.    ORDER

      For the foregoing reasons, I grant the Defendants' motion for summary judgment with

---

[39] The Massachusetts Supreme Judicial Court has "consistently employed Federal takings analysis in examining claims under art. 10 of the Massachusetts Declaration of Rights." Fitchburg Gas and Elec. Light Co. v. Dep't of Pub. Utilities, 467 Mass. 768, 775 n.8 (2014) (citations omitted).  Accordingly, because this Court has found that issues of fact preclude summary judgment on the Plaintiffs' federal takings claim, the Defendants are not entitled to summary judgment on Plaintiffs' claim under Article 10 of the Massachusetts Declaration of Rights.

respect to Plaintiffs' <u>Lucas</u> claim.  The motion is otherwise denied.  This Court will issue an order setting this case for trial.

                                         /s/ Jennifer C. Boal
                                       JENNIFER C. BOAL
                                       U.S. MAGISTRATE JUDGE